FULLERTON v. GLENS FALLS GAS & ELECTRIC LIGHT CO.

(Supreme Court, Appellate Division, Third Department.   May 22, 1913.)

1. GAS (§ 18*)—ACTION FOR INJURIES—EVIDENCE.
    The leakage of gas from gas mains makes a prima facie case of negligence.
    [Ed. Note.—For other cases, see Gas, Dec. Dig. § 18.*]

2. DAMAGES (§ 138*)—EXCESSIVE DAMAGES—INJURIES TO PROPERTY.
    A verdict of $350 for damages for three elm trees, standing in front of plaintiff's house, between the sidewalk and the curb, killed by leakage of gas from defendant's gas mains, was not excessive.
    [Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 397, 398; Dec. Dig. § 138.*]

3. APPEAL AND ERROR (§ 1004*)—REVIEW—AMOUNT OF RECOVERY.
    Unless the amount of recovery fixed by the jury is palpably and grossly excessive, it should not be disturbed.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. § 1004.*]

    Smith, P. J., and Kellogg, J., dissenting.

Appeal from Trial Term, Warren County.

Action by Maggie Fullerton against the Glens Falls Gas & Electric Light Company.   From a judgment for plaintiff, defendant appeals. Affirmed.

See, also, 148 App. Div. 481, 132 N. Y. Supp. 995.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Jenkins & Barker, of Glens Falls, for appellant.

Chambers & Finn, of Glens Falls, for respondent.

HOWARD, J.   The plaintiff owns a house and lot in Glens Falls. In 1907 there were 13 shade trees around the premises.   Along the front of the house were 4 elm trees, standing about 20 feet apart, between the curb and the sidewalk.   These trees were about 30 years old, were about 18 or 20 inches in diameter, and the tops were large and very nice.   In 1907 the defendant laid gas mains in First street in front of the plaintiff's premises.   Soon after the gas was turned into the mains its odor was smelled in the immediate vicinity of the trees, grass turned "yellow and crispy like," and leaves on the elm trees began to turn yellow and curl up.   Three of the trees did not leaf out the next spring, but died.   In July, 1908, the defendant repaired the main near the trees, digging holes near the trees which had died, in order to make the repairs.   The jury has found that the gas killed the trees, and has rendered a verdict for $350 damages.

[1] The defendant asserts that the leakage of gas does not even make a prima facie case of negligence.   It relies upon Hammerschmidt v. Municipal Gas Co., 114 App. Div. 290, 99 N. Y. Supp. 890, decided in this court, and Hutchinson v. Boston Gaslight Co., 122 Mass. 219, to sustain this assertion.   But let us trace these authorities to the bottom to discover the origin of this declaration and

learn whether it is the law. In Hammerschmidt v. Municipal Gas Co., 114 App. Div. 290, 99 N. Y. Supp. 890, this court said:

"The fact that the leakage occurs does not make even a prima facie case of negligence."

This assertion seems to have been applicable to the facts then under consideration. Hutchinson v. Boston Gaslight Co., 122 Mass. 219, was cited to sustain this proposition; but the case is not a sufficient precedent on which to base a judicial declaration that a leakage of gas from mains is insufficient in any instance and in all instances to make a prima facie case of negligence. The leakage of gas in the Massachusetts case occurred at the time of an extraordinary public calamity in Boston—the great conflagration of 1872. On November 9th, a fire devastated wide areas of Boston; 65 acres of the business section were burned over; property worth $80,000,000 was destroyed; 776 buildings were consumed. On the next day after the fire, November 10th, the day of the accident in question, the streets were filled with rubbish, wreckage, and débris, and the fire was yet smoldering and smoking in the ruins; the militia and the police patrolled the burned district; there were continuous sounds of explosion; unprecedented excitement reigned; heavy buildings were falling upon the streets; and great fires and excessive heat melted the pavements. These unusual energies and conditions were operating upon the earth, and operating upon water pipes and gas mains, warping, wrenching, and twisting them out of joint and out of place. It was under these conditions that the Massachusetts court held that the mere leakage of gas was not prima facie evidence of negligence.

The situation under consideration here is utterly unlike the situation in the Massachusetts case. Here a new gas main was laid in First street in July, 1907. Almost immediately thereafter—that is, in July and August—people passing along the street smelled gas. As soon as the main was repaired, the gas stopped leaking. No convulsion of the earth or other unusual agency was shown to have affected the mains. It seems to me that the conclusion is irresistible that the pipes must have been negligently laid, negligently calked, negligently joined together; otherwise, there could have been no escape of gas. The situation excludes everything but the negligence of the defendant. This was a new main, and the negligence does not arise because of the failure of the defendant to repair after notice, but because of the original carelessness in laying the mains. It was not the negligence of maintenance, where notice may be necessary, but the negligence of construction, where notice is never necessary.

But the Supreme Judicial Court of Massachusetts, instead of holding that the leakage of gas "does not make even a prima facie case of negligence," has held exactly the contrary. Smith v. Boston Gaslight Co., 129 Mass. 318. In the case just cited the Massachusetts court approved of this language by the trial judge:

"* * * The fact that the gas escaped was prima facie evidence of some neglect on the part of the defendant."

This case was cited with approval by Chief Judge Cullen in Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St.

Rep. 630. There was abundant evidence to support the finding of the jury that the trees were killed by gas.

[2, 3] I do not think the verdict was excessive. The amount of damages sustained in this case, as in most other cases, is a matter of opinion. Unless the amount fixed by the jury is palpably and grossly excessive, it should not be disturbed. Simply because our opinion differs (if it does) from the opinion of the jury we should not interfere. The defendant, by its appeal from a previous $200 verdict, brought about a reversal of the first judgment, not upon the merits, but upon a technicality. This has forced the plaintiff twice to litigate her claim; and this we should consider when we are asked to reduce her judgment.

The judgment should be affirmed, with costs. All concur, except SMITH, P. J., and KELLOGG, J., who dissent, on the ground that the verdict is excessive.