## Woodburn v. Union Light, Heat & Power Company.

(Decided March 26, 1915.)

### Appeal from Campbell Circuit Court.

1. Explosives—Action for Damages for.—Where gas was furnished appellant through a meter, in a suit to recover damages caused by an explosion of gas occasioned by an alleged defect in the meter, it was incumbent upon him to show that the explosion was from natural gas, and that it leaked from the meter by reason of a defect which was known or by the exercise of proper care could have been known by appellee.

2. Explosives—Negligence—Presumption.—The fact that an explosion does not raise a presumption of negligence or make out a prima facie case against the company, and where there was no evidence tending to show a defect in the fittings or a leak in the meter, the court properly took the case from the jury.

BRENT SPENCE and HUBBARD SCHWARTZ for appellant.

MATT HEROLD for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

The appellant was the plaintiff below, and sued to recover damages for the loss of his home and contents resulting, as he alleged, from an explosion of natural gas. The appellee supplied the gas, and operated under a city ordinance, by the terms of which it furnished to patrons, without charge, a meter for measuring the gas consumed. The ordinance further required that all meters, mains, pipes, and appendages shall be of the most modern, approved and accurate kind and construction. It is further provided that all meters shall be subject to a reasonable system of inspection to be provided by ordinance; but the city never adopted any ordinance regulating inspection.

After hearing all the evidence, the court directed the jury to return a verdict for the appellee, and the question is whether there was any evidence to support appellant's claim for damages and justify a submission of the case to the jury.

The ground of recovery was the alleged carelessness and negligence of the company in furnishing and suffering the meter to be in a leaky, unsafe, dangerous and defective condition, and that its defective condition was well known to the company, or by the exercise of proper care it might have been known to the company.

It is alleged that by reason of the defective condition of the meter natural gas was permitted to leak and escape into the basement of the residence in such quantities that by coming in contact with the fire in the furnace, also situated in the basement, the gas exploded and the residence was wrecked, and the household furniture ruined to his damage in the sum of $6,000. It is not disputed that the home and furniture were practically destroyed by an explosion of gas, and that appellant was damaged in the sum claimed. The damage came solely from the explosion, as no fire followed it. In order to recover it was incumbent upon him to show that the explosion was from natural gas, and that it leaked from the meter by reason of a defect which was known, or by the exercise of proper care could have been known, by appellee.

The home was a two-story brick, covering a basement 8 feet high and extending with the house dimensions. About the middle of the basement was situated a furnace for heating the house by hot air. At one side of the basement the meter was fastened on a shelf. On the other side there seems to have been an accumulation of gas of some kind which leaked from some place, and when it exploded the floor over the basement was torn up and the east and west walls of the house were thrown out, leaving the roof supported by the north and south walls. The explosion occurred about midnight of October 31st. Some time during the day a fire was started in the furnace, and this was the first time the house had been heated that season. The appellant, when he came home that night at 11 o'clock, did not go into the basement to see about the furnace, for he did not know a fire had been started. He went to his room, lighted the gas, retired and had been asleep for an hour when the

explosion occurred. He employed experts to examine the premises and determine, if possible, the cause of the explosion. They immediately took charge of the meter, and this was one of the first things to be examined. It is made of six pieces of tin or sheet iron soldered together. This meter had been in use in the house for at least seven years and was furnished by appellee's predecessor in the supply of gas. No leak was found in it; gas was turned on and it was discovered that gas would not even pass through it. It carried the gas before the explosion, and this was demonstrated by the fact that appellant lighted the gas in his room an hour before. The fact that when the meter was inspected after the explosion it was discovered that gas would not pass through it is accounted for by an indentation on the front and rear of it. This was caused by some substance striking it in the explosion or else from air pressure resulting from the explosion. Careful examination was made of all the other gas fittings and mains in and about the basement, and the service pipe leading from the main in the street was dug up, but no leak was discovered anywhere. During the next two weeks appellant's experts made other tests of the meter, and at the end of that time, by the use of an air pump sufficient air pressure was created within the meter to bulge out the sides, and restore it to normal shape. Then further tests were made and a leak was discovered on a soldered seam at the bottom and rear of the meter.

Appellant's expert says he scratched on the meter a mark to locate the place of the leak, and for identification made another scratch on it and made a memorandum of the manufacturer's numbers. The meter was then delivered into the possession of the gas company, where it was retained until the day of the trial. In testifying before the jury the expert identified the meter but was unable to locate the leak, although he took time during the trial to make tests for that purpose. If the meter had been repaired—that is, resoldered—after it came into the hands of the gas company, the expert could not locate the place or demonstrate the fact. In fact, there was no testimony as to any change in condition after the meter went out of the hands of the expert except his insistence that after he had expanded the sides of it, he detected a leak, and on the trial of the case he could not locate it. Moreover, we do not believe that

the leak which the expert says he discovered two weeks after the explosion is evidence that the meter was de-. fective when the explosion occurred, for he admits there was no leak in it until he changed its condition by bulging out the sides, which, in all probability, broke a soldered seam. It is true this meter had been in use for as many as seven years, but there is no proof that it was not of the most modern and approved kind and construction. There is no proof of any better meter in existence, or of any reason why the gas company should have supplied another in its place. An alleged defect in the meter is the only negligence plead, and the facts above related constitute the only proof offered to establish the negligence. There was no evidence of any defect in the gas fittings or in the main or service pipes, and there was no evidence of a smell of gas, nor of anything to indicate to either party that any of the apparatus was dangerous or needed attention. It seems to have been one of those unaccountable accidents affording ample room for conjecture, but no accounting for the real cause. Some one may have carelessly left open a gas jet or turned some valve during the day which permitted gas to escape. Evidence was also introduced to show the possibility of the furnace generating the gas which caused the explosion.

Appellant cites the case of Hartman v. Citizens Natural Gas Company, 210 Pa., 19, where a gas company was held liable for damages by reason of gas escaping and exploding, when it knew, or by the exercise of ordinary care should have known, of the defects in its pipes or mains. In that case, and, in fact, in every one to which our attention has been called, there was evidence of a defect in the pipes or mains, or some part of the equipment which the gas company was under duty of maintaining and repairing, or there was evidence of negligence on the part of the company or its servant with reference to such duty.

In Louisville Gas Company v. Guetenkuntz, 82 Ky., 433, the company was held liable for the explosion caused by its servants negligently leaving a key in the service pipe valve, and likely to be meddled with by thoughtless persons.

In Louisville Gas Company v. Frye, 147 Ky., 754, the company was held liable because it had knowledge that the pipe was leaking and took no steps to remedy the trouble.

In Louisville Gas Company v. Guelet, 150 Ky., 583, 42 L. R. A. (N. S.), 703, a tenant moved out and the company shut off the gas by screwing a cap on the pipe. By the negligent way in which this cap was screwed on gas escaped and caused an explosion to the injury of the next tenant. The company was held liable.

Appellant places special emphasis on the case of Smith v. Boston Gas Company, 129 Mass., 318. A mother and child occupied the same room and bed. Next morning the door of the room was · broken open and the mother found dead and the child insensible by her side. Escaping gas caused the trouble. While there were no gas pipes or fittings in the room, there was proof that the gas escaped from a broken pipe laid by the company through the street adjacent to the room. None of these cases support the theory of appellant, because there was proof of defective pipes or fittings, or of lack of proper care by the company or its servants. The mere fact of an explosion does not raise a presumption of negligence or make out a prima facie case against the company. We think the rule is well settled in the case of Sipple v. Laclede Gas Company, 102 S. W. (Mo.), 608, where it was held:

"In an action against a gas company for injury occasioned by escaping gas, prima facie proof of negligence is made by showing a break or leak in the main or the consequent escaping of gas operating proximately to cause the loss."

In the case at bar there is no proof of any break or leak in the mains. The proof that there ever was a leak in the meter is very unsatisfactory, and such leak as was testified to was only discovered after two weeks' test, and then by such a change in the condition of the meter as to indicate that the changed condition of the meter caused the leak.

"When the question is one of negligence or no negligence, it is well settled law that when the evidence is equally consistent with either view, the existence or nonexistence, the court should not submit the case to the jury, for the party affirming negligence has failed to prove it." Louisville Gas Co. v. Kaufman, Strauss & Co., 105 Ky., 131; Hollon v. Compton F. & L. Co., 127 Ky., 266; Hughes v. Cin., N. O. & T. P. Rd., 91 Ky., 526; Tollins v. Terrell, 133 Ky., 210; Thomas Admr. v. Eminence Dis. Co., 151 Ky., 29; Wood v. Cumberland Tel.

Co., 151 Ky., 77; C. & O. R. R. Co. v. Bagby, 155 Ky., 420; Caldwell's Admr. v. C., N. O. & T. P. Rd. Co., 155 Ky., 609; Osborne's Admr. v. C., N. O. & T. P. Rd. Co., 158 Ky., 176; Stone v. Van Noy Rd. News Co., 153 Ky., 240.

In this case no one can say whose negligence caused the explosion, if, in fact, it was caused by the negligence of anyone.

We have reached the conclusion that the court properly directed the jury to find for appellee, and the judgment is, therefore, affirmed.