WILLIAM MESSINA AND JENNIE DI CAROLIS, RESPONDENTS, v. JOHN W. TERHUNE, APPELLANT, JOSEPH PICO AND CHISHOLM-WEISBERGER, INCORPORATED, DEFENDANTS.

Argued May 28, 1929—Decided February 3, 1930.

For the appellant, *William J. Morrison, Jr.*

For the respondents, *De Turck & West.*

The opinion of the court was delivered by

PARKER, J. The two respondents joined as plaintiffs in their respective individual rights, as provided by section 4 of the Practice act of 1912. The plaintiff Di Carolis was an employe of the plaintiff Messina, who was a tenant of premises adjoining land of appellant Terhune; and both plaintiffs sustained injury because of the caving of the land on their side of the property line, due to excavation for a new building on land of Terhune. The case is similar in its circumstances, though not in its outcome, to the case of *Tooker* v. *Lonky, ante, p.* 110, in which case, as in this, the owner made a general contract for building with a principal contractor, who sublet the contract for excavating. But in Tooker *v.* Lonky the subcontractor was not joined as a defendant; there was a voluntary nonsuit as to the owner and a recovery against the principal contractor, who appealed. In the present case there is likewise a recovery against the principal contractor (Pico), who does not appeal, a voluntary nonsuit as to the subcontractor corporation, which was not shown to be connected with the accident in any way, and also a recovery against the owner, who has appealed, and assigns for error the refusal of the trial court to grant a motion for a nonsuit, and a motion for direction of a verdict.

The complaint, in paragraph 7, counts on negligence in excavating "on said land" without leaving proper support for the store building in which Messina was a tenant, so that it collapsed, injuring his stock and fixtures, and causing personal injury to Miss Di Carolis; and in paragraph 8, seems to hint to a trespass by digging over the line and under the building occupied by plaintiffs; and in the same paragraph charges negligence in disobeying the local building code by failing to protect the excavation; and in failing to give notice of intention to excavate the adjoining land. *Schultz* v. *Byers,* 53 *N. J. L.* 442.

The motion to nonsuit as to Terhune, the owner, was rested on the ground that it appeared without dispute that Pico was an independent contractor and that there was no proof that Terhune had or exercised any control over the manner in which he did his work. This was refused, and an exception entered. The motion for a direction was put upon the same ground, adding that there was no competent testimony showing any encroachment (trespass) on the adjoining property. This was also refused, and exception entered.

It was undenied that Pico was the contractor. The building contract, which was in writing and in the form usual with such instruments, was put in evidence by the plaintiffs. It provides that Pico shall erect and finish the new building, located, &c., according to plans and specifications made by F. M., architect * * * "in a good workmanlike and substantial manner, under the direction of the said John W. Terhune, to be testified by a writing or certificate under the hand of the said John W. Terhune" * * *. The remainder of the instrument need not be reproduced. One point insisted on by the plaintiffs is based on the clause just quoted, which, it will be observed, designates not the architect, but the owner, as the person under whose "direction" the work is to be performed, and who is to certify to its due performance. The argument for respondents on this phase of the case is that such a clause in effect creates the relation of master and servant between the owner and the person named as contractor, so that in case of wrongful acts by the latter, the owner is liable on the theory of *respondeat superior*. But our view is to the contrary. It is common knowledge that every important working contract contains a provision of this character, referring to some one, usually an architect or engineer, the duty of overseeing the work, insisting on its proper performance from the standpoint of the owner, and enforcing that insistance by refusing to certify payment for work not according to the requirements. Such was the duty of the architect in *Jansen* v. *Jersey City*, 61 *N. J. L.* 243, 244; and such, no doubt, was the duty of the architect in *Mann* v. *Max*, 93 *Id.* 191. But it was not the duty of the

architect in the Jansen case to see to it that the wall built by the principal contractor should not fall on the plaintiff; nor was it the duty of the architect in Mann v. Max to take care, on behalf of his principal, that the scaffold over the sidewalk should not be built so low as to require the passer-by to stoop in order to pass under it. So also in the present case, if the architect had been named in the quoted clause, it would have imposed on him no duty, though he represented the owner in seeing to a faithful performance of the contract, to provide against or prevent careless or trespassing excavation by the contractor. It must be assumed that the contractor was to do his work in a lawful manner; the work was not *per se* a trespass any more than in Mann v. Max it was *per se* a nuisance; and responsbiility for either tort in performing it would fall on the shoulders of the contractor where it naturally belonged.

The fact that Terhune, named in the clause quoted, was the owner of the premises, does not alter the situation. The only difference. is that he was personally to judge of the sufficiency of the work and be satisfied therewith, instead of his architect; but the fact that he was to take that part directly instead of through an agent, likewise imposed on him no responsibility for unlawful acts of the contractor in performing the work. Consequently, under well settled principles, the owner was not responsible for negligence or other unlawful act of the contractor unless necessarily contemplated by the contract or unless due to some personal interposition by the owner, as a result of which the relation of master and servant would be inferable. *Cuff* v. *Newark and New York Railroad Co.*, 35 N. J. L. 17, 574; *Redstrake* v. *Swayze,* 52 *Id.* 129, 414; *Sarno* v. *Gulf Refining Co.*, 99 *Id.* 340; *affirmed,* 102 *Id.* 223; *Riley* v. *Jersey Leather Co.*, 100 *Id.* 300; *Busch* v. *Seaboard By-Products Co., Id.* 304; *Bush* v. *Margolis,* 102 *Id.* 179; *Giroud* v. *Stryker Transportation Co.*, 104 *Id.* 424. The trial judge, in denying the motion to nonsuit, relied on the Supreme Court case of *Wegener* v. *Sugarman,* 104 *Id.* 26, but whether he was justified in so doing would depend on similarity of the basic

facts, and particularly whether, as in the case cited, the alleged trespass over the property line, of which there was some evidence, was due to the personal participation of the owner in directing or authorizing such trespass, which was the situation in *Wegener* v. *Sugarman* and *Topf* v. *West Shore, &c., Co.,* 46 *Id.* 34.

With respect to the general participation of Terhune as a master controlling the work, there is not only no evidence to indicate this, but what evidence there is, runs to the contrary. For the respondents it is argued that the property line was laid out on the ground by Terhune's engineer, but it is not suggested, nor is there any evidence to indicate, that such line was wrongly laid; in fact, the only professional evidence on that point is that the line was correct. Pico, the contractor, testified that he kept the digging on the right side of the line; some of the testimony for plaintiffs is that Pico's men cut under plaintiffs' building, which Pico denied; but that results merely in a contradiction of testimony as to whether they transgressed the line, and not as to whether they were led to do so by any mislocation of it. There is a suggestion in the brief that the plans called for a building which would necessarily encroach over the line; but as neither party put the plans in evidence and there is no indication in the contract of the dimensions of the building and we find no other evidence on that point, the suggestion seems unwarranted.

Nor is there anything in the claim that the party wall statute (*Comp. Stat., p.* 3926, *pl.* 1) was violated, as there is no evidence to show that the excavation was intended to be carried to a depth of more than eight feet below the curb or grade of the street, as specified in that statute. We have examined the evidence with care, and fail to find anything to indicate that there was as much as eight feet of excavation, or that so much was intended.

Finally, the section of the local building code provides that "all excavations for buildings and other work shall be properly guarded and protected so as to prevent same from becoming dangerous to life, limb or adjoining property."

We are informed by the brief for the respondents that this section is predicated upon section 1 of article 14 of the Home Rule act (*Pamph. L.* 1917, *p.* 155), which in paragraph (X) confers power "to regulate excavations below the established grade or curb line of any street in any such municipality not greater than eight feet, which the owner of any land may make, in the erection of any building upon his own property, &c." The phrase "not greater than eight feet" is omitted in the brief; and the quoted portion is only a small part of the paragraph, which goes on to provide for the giving of notice to adjoining owners to look after their own foundations, to the end that in case of neglect or refusal so to do, the party giving notice may enter on their lands and protect such foundations at the expense of said adjoining owners. In short, the paragraph which we have not copied at length, in substance, confers on municipalities the power to make the rule of the party wall statute referring to excavations of more than eight feet applicable to excavations of less than that depth; and it is clear that the power "to regulate" did not embrace the power to require excavators at their own expense and at their peril to insure adjoining buildings against falling into the excavation, and to render them liable in damages because of the mere fact that a building did so fall.

The complaint does not count on failure to give notice as required by the ordinance (see *Newman* v. *Pasternack,* 103 *N. J. L.* 434), but on the "protective" provision which if valid at all can call for no more than reasonable care; and that duty comes back to the contractor at once.

We think there was error in refusing a direction, and for this cause there must be a reversal to the end that a *venire de novo* issue.

*For affirmance*—KALSCH, BLACK, CAMPBELL, BODINE, JJ. 4.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 10.