904 A.2d 846 (2006)
387 N.J. Super. 583
GREAT NORTHERN INSURANCE COMPANY,[1] Plaintiff,
v.
George K. LEONTARAKIS, Defendant, and
Isadore Spiegel, Defendant/Third-Party Plaintiff-Appellant,
v.
George K. Leontarakis, Third-Party Defendant-Respondent, and
Robert W. Dill, Colonial Oaks Construction Inc., Preferred Construction, Inc., Joseph M. Mercandante, Inc., and David Guatarz, Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted March 22, 2006.
Decided August 21, 2006.
*848 Franzblau Dratch, attorneys for appellant (Stephen N. Dratch, of counsel and on the brief; Julian Wilsey, Livingston, on the brief).
Leonard H. Adoff, attorney for respondent.
Before Judges WECKER, FUENTES and GRAVES.
The opinion of the court was delivered by
GRAVES, J.A.D.
This case involves a dispute between adjoining landowners. Plaintiff Isadore Spiegel owns a two-story residence located atop a hill at 6-8 Watchung Road in Short Hills, an area of Millburn Township (the Township). The land owned by defendant George Leontarakis is below and to the east of Spiegel's property. At trial, Spiegel claimed he suffered property damage due to excavation work performed on Leontarakis's land, which resulted in the loss of lateral support to his property.
Spiegel appeals from an order of involuntary dismissal at the conclusion of his case. R. 4:37-2(b). The trial court reasoned that Leontarakis was not liable for any damage to Spiegel's property, because the excavation work that caused the damage was performed by an independent contractor. We reverse the involuntary dismissal order, however, because a reasonable jury could conclude Leontarakis breached a nondelegable statutory duty to provide lateral support to Spiegel's property. Spiegel also appeals from a pretrial order limiting his damage claim, but we affirm that order.
Spiegel's house faces north and the parties share a common boundary line along the eastern edge of Spiegel's property (if one is standing on Watchung Road facing Spiegel's house, Leontarakis's property is to the left of Spiegel's property). Spiegel's land slopes downward from west to east, so that the property owned by Leontarakis is lower than Spiegel's property.
In the early 1970s, Spiegel had a brick privacy wall constructed on his property along the common boundary line separating the two properties. The wall was 120-feet long, a foot thick, and it varied in height from six feet above the grade of Spiegel's property at its highest level, to two and one-half to three feet above grade at its lowest level. Spiegel also has an in-ground swimming pool in his backyard surrounded by a patio area, and there is a flagstone and concrete walkway, between six and eight feet wide, on the eastern side of Spiegel's house running from the front of the house to a set of steps behind the house. The foundation wall of Spiegel's house is located approximately seventeen feet from the common boundary line.
*849 In 1997 Leontarakis decided to construct a new home on his vacant lot, which he hoped to sell for a profit. In July 1997, he hired architect Robert Dill to prepare plans for a two-story house with a basement, and Leontarakis entered into a written agreement with Dill, whereby Dill would act as both architect and general contractor for the construction project. Dill hired Colonial Oaks to perform the construction work, and he hired Preferred Construction, Inc. (Preferred) to do the masonry work, which included installation of the foundation, basement, and a concrete slab for the garage.
Preferred hired David Guatarz to excavate the foundation and basement of the new home. When Guatarz finished excavating sometime in early 1998, there was approximately an eighteen-foot difference in grade between the bottom of the excavation and the ground level of Spiegel's adjacent lot. At its closest point, the foundation of the new home was about eighteen feet from the parties' shared property line. Engineer Andrew Sharick, who performed an inspection on behalf of Spiegel's home insurance company, Great Northern, described the soil in the area of the parties' common property line as "silty and sandy with few large rocks." In addition, Spiegel's structural engineer, Peter D. Matera, testified that soil test results indicated the soil near the parties' common property line adjacent to the excavation site "was in a very loose state."
After the excavation work was completed on Leontarakis's property, some of the soil supporting Spiegel's brick privacy wall "slid down into the basement excavation." Preferred, in consultation with Dill, then attempted to protect Spiegel's brick privacy wall by installing "steel sheeting." Despite these efforts, sections of Spiegel's brick privacy wall collapsed onto Leontarakis's property.
At trial, Spiegel alleged that the excavation work, and resulting loss of lateral support, caused extensive damage to his brick privacy wall, home, in-ground swimming pool, pool patio, flagstone and concrete walkway, and front steps. The total cost to repair the damage to Spiegel's property was estimated to be $925,874 as of January 26, 1999, including the sum of $366,600 to replace Spiegel's brick privacy wall. Spiegel's damages expert, Theodore Maglione, testified that the wall cannot be repaired, but must be replaced entirely.
A jury trial took place on November 8, 10, 12, 15, 16, and 17, 2004, regarding Spiegel's claims against Leontarakis, Dill, Colonial Oaks, and Guatarz.[2] At the conclusion of Spiegel's case, the trial court, relying upon the independent contractor rule, entered a directed verdict in favor of Leontarakis:
I have heard not one shred, iota, or imprints [sic] that Mr. Leontarakis ... did anything that could be considered negligent in any way in causing this incident. There's a homeowner that wants a home built, hires a professional architect, relies upon the architect to prepare the ... plans, to supervise, to do the construction.... [Mr. Leontarakis] didn't even have any direct contract dealings with the subcontractors. He was paying a set price to Mr. Dill to have the work done.
... [T]hat [Mr. Leontarakis] has input as to how many rooms, or the size, or whatever he would like it to be, he's still relying upon the architect to prepare the plan, to repair  to prepare any retaining walls, to do what has to be done to prevent any problems on the property. It is not expected that any homeowner *850 would have knowledge or reason to believe that he was causing a danger to the plaintiff's property.
... I've seen no New Jersey case that says that a [homeowner] ... has automatic liability without being involved in or having any responsibility for choosing how the work was done, or doing the work when they hire a contractor.... I don't think there's any case law. There's been no case law that's been presented, and I see no basis in this particular case to continue against Mr. Leontarakis. I think the plaintiff has... failed in establishing any negligence or any case directly against Mr. Leontarakis. And, therefore, the plaintiff's complaint will be dismissed as to [Mr. Leontarakis] I will enter a directed verdict on that issue.
Spiegel subsequently settled his remaining claims against Dill (for the sum of $30,000), Colonial Oaks (for $40,000), and Guatarz (for $42,500). Before trial, on August 8, 2003, Spiegel similarly entered into a settlement agreement with his insurer, Great Northern.
As we noted, the trial court dismissed Spiegel's complaint on the ground that the only legal basis for his claim against Leontarakis was Leontarakis's own negligence, and Spiegel failed to produce such evidence. We now address the legal principles that convince us that the ruling was erroneous.
Under the common law, a landowner who negligently removes lateral support[3] may be held liable for damage to improvements on an adjoining property. Schultz v. Byers, 53 N.J.L. 442, 443, 22 A. 514 (E. & A. 1891) ("[A]s to buildings on or near the boundary line, injured by excavating on the adjoining land, there is no right of action, in the absence of improper motive, or of carelessness in the execution of the work."). A landowner who hires an independent contractor, however, is generally not liable at common law if the independent contractor negligently removes lateral support necessary to sustain improvements on an adjoining lot. Messina v. Terhune, 106 N.J.L. 119, 122, 148 A. 758 (E. & A.1930) (holding landowner not liable for building collapse on adjoining property caused by the negligence of his independent contractor in removing lateral support).
"`[O]rdinarily where a person engages a contractor, who conducts an independent business by means of his own employees, to do work not in itself a nuisance (as our cases put it), he is not liable for the negligent acts of the contractor in the performance of the contract.'" Mavrikidis v. Petullo, 153 N.J. 117, 131, 707 A.2d 977 (1998) (quoting Majestic Realty Assocs., Inc. v. Toti Contracting Co., 30 N.J. 425, 430-31, 153 A.2d 321 (1959)); accord Bahrle v. Exxon Corp., 145 N.J. 144, 156, 678 A.2d 225 (1996). Vicarious liability is not warranted "where the contractee's supervisory interest relates [only] to the result to be accomplished, not to the means of accomplishing it." Mavrikidis, supra, 153 N.J. at 135, 707 A.2d 977 (alteration in original). In Baldasarre v. Butler, the Court explained why the principal is generally not vicariously liable for the torts of the independent contractor if the principal did not direct or participate in them:
The important difference between an employee and an independent contractor is that one who hires an independent contractor "has no right of control over the manner in which the work is to be done, it is to be regarded as the contractor's *851 own enterprise, and he, rather than the employer is the proper party to be charged with the responsibility for preventing the risk, and administering and distributing it."
[132 N.J. 278, 291, 625 A.2d 458 (1993) (quoting W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 71 (5th ed.1984)).]
In cases involving a significant risk of grave harm, however, the duty owed to the public may be too important to allow its delegation to an independent contractor, and therefore the legislature or the court may impose a nondelegable duty on the principal. See Restatement (Second) of Torts § 424 (1965) (noting statute or regulation may impose nondelegable duty on principal to provide safeguards or precautions); Majestic Realty, supra, 30 N.J. at 436, 153 A.2d 321 (finding landowner had nondelegable duty to exercise reasonable care to members of the public or adjoining property owners in razing building); Araujo v. N.J. Natural Gas Co., 62 N.J.Super. 88, 102, 162 A.2d 299 (App.Div.) (concluding gas company could not delegate to independent contractor its duty to properly install natural gas pipes), certif. denied, 33 N.J. 328, 164 A.2d 380 (1960); see also DeMary v. Rieker, 302 N.J.Super. 208, 222, 695 A.2d 294 (App.Div.1997) (stating it is "in the public interest" to impose a nondelegable duty on an automobile finance company to effectuate a vehicle repossession without a breach of the peace); Marek v. Prof'l Health Servs., Inc., 179 N.J.Super. 433, 441, 432 A.2d 538 (App.Div.) (holding health care entity was vicariously liable for any malpractice of its independent contractor radiologist because of its nondelegable duty to "carefully and diligently diagnose" any condition or disease appearing on a patient's x-rays), appeal dismissed, 93 N.J. 232, 460 A.2d 645 (1981).
The primary reason for imposing a nondelegable duty on the principal is that the duty is of extraordinary importance to the public. See Majestic Realty, supra, 30 N.J. at 439, 153 A.2d 321 (noting duty may be nondelegable where its social value "to the community is so significant that the law cannot allow it to be transferred to another"); see also Marek, supra, 179 N.J.Super. at 440-41, 432 A.2d 538 (noting duty's importance to the community determines whether it may be delegated); Keeton, supra, § 71 (concluding that nondelegability is usually the rule where "the responsibility is so important to the community that the employer [of the independent contractor] should not be permitted to transfer it to another").
In recognition of the significant risk of grave harm involved in removing lateral support from adjoining land, legislatures in a number of states, including New Jersey, "have enacted statutes codifying or altering the law of lateral support." 9 Richard R. Powell, Powell on Real Property § 63.01[6] (Michael Allan Wolf ed.2001). N.J.S.A. 46:10-1 (the statute) provides as follows:
Whenever excavations, for buildings or other purposes, on any lot or piece of land, shall be intended to be carried to a depth of more than eight feet below the curb or grade of the street, and there shall be any party or other wall, wholly or partly on adjoining land, and standing upon or near the boundary lines of such lot or piece of land, the person causing such excavations to be made, if afforded the necessary license to enter on the adjoining land, but not otherwise, shall, at all times, from the commencement until the completion of such excavations, preserve, at his own expense, such party[4] *852 or other wall from injury, and so support the same by a proper foundation that it shall remain as stable as before such excavations were commenced.
In Hirschberg v. Flusser, 91 N.J.L. 66, 102 A. 353 (Sup.Ct.1917), aff'd, 92 N.J.L. 515, 105 A. 893 (E. & A.1918), the court explained the statute's requirements as follows:
Plainly, the statute is a radical departure from the common law, which contented itself with requiring support of the adjoining land alone, and left its owner to care for his own building, after reasonable notice of the intended excavation. Schultz v. Byers, 53 N.J.L. 442 [22 A. 514]. The language of the act of 1871[5] is so strong and so plain as to leave little, if any, room for doubt. In a case within its purview it requires the person causing the excavation to be made, when licensed to enter on the other's land for that purpose, at all times from commencement to completion, at his own expense, to preserve said wall from injury, and so support the same by a proper foundation that it shall remain as stable as before such excavations were commenced. There is nothing in this about due care, or reasonable care; the duty is an absolute one, to support the wall and keep it as stable as before the excavation was begun. We have difficulty in imagining language that could be stronger or more explicit.
[91 N.J.L. at 67-68, 102 A. 353.]
The Court of Errors and Appeals contrasted the common law duty of an excavating landowner with the nondelegable duty imposed by the statute as follows:
Nor does the rule of independent contractor protect the [landowner]. The general doctrine relating to employment of an independent contractor in cases where the work is not in itself a nuisance is well understood and needs no discussion here; but there are several exceptions to the rule, and one of them is that where the duty to the public or to an individual is imposed on a party by statute or ordinance, that party cannot escape liability by delegating the work to an independent contractor .... The duty being imposed by statute, cannot be delegated by the party on whom it is imposed, and that being so, the independent contractor feature is no part of the case.
[Merola v. Howard Sav. Inst., 109 N.J.L. 37, 39, 160 A. 416 (E. & A.1932) (citations omitted); accord Newman v. Pasternack, 103 N.J.L. 434, 438, 135 A. 877 (E. & A.1927).]
Here, Leontarakis "does not dispute" that the excavation conducted on his property was deeper than "eight feet below the curb or grade of the street." And Leontarakis, despite having employed an independent contractor, was the person causing the excavation to be made. See Merola, supra, 109 N.J.L. at 39, 160 A. 416 ("[W]e are clear that an owner by engaging a contractor ... is himself the person causing such excavation to be made." (internal quotation marks omitted)). Thus, a reasonable jury could conclude that Leontarakis *853 is liable under the statute even if the excavation work was performed "ever so carefully" by an independent contractor. See id. at 41, 160 A. 416.
Leontarakis contends that the statute does not apply because Spiegel did not authorize him to go onto Spiegel's land even though Spiegel "had constructive knowledge of the excavation." We note that proper notice entails informing the adjoining landowner (in this case Spiegel) of the depth of the proposed excavation. See Newman, supra, 103 N.J.L. at 436-38, 135 A. 877. And, depending on the circumstances, whether notice was proper may turn on how long before the scheduled excavation such notice was given, and whether other material details of the excavation were conveyed to the adjoining landowner. Leontarakis concedes that he never gave Spiegel actual notice of the excavation prior to its commencement. We therefore reject Leontarakis's assertion that he could not be liable under the statute because Spiegel failed to allow him to enter onto Spiegel's land. See Newman, supra, 103 N.J.L. at 437-38, 135 A. 877 (finding "defendant would have had to give a proper notice and the plaintiff would have had to fail to give to the defendant a license to enter upon his lands" before defendant could avoid liability).
In our view, a reasonable jury could find that Leontarakis breached the nondelegable duty to provide lateral support to Spiegel's property imposed by N.J.S.A. 46:10-1. Although Spiegel failed to specifically rely on the statute before the trial court, by dismissing Spiegel's case as he did, the trial judge ruled in error that only Leontarakis's own negligence could support Spiegel's damage claim. That ruling constitutes plain error, which has been called to our attention on appeal and which Leontarakis has had the opportunity to brief and argue. See Araujo, supra, 62 N.J.Super. at 101, 162 A.2d 299 (noting substantial justice may require that the scope of appellate inquiry not be restricted to legal theories advanced below); accord Spiegle v. Seaman, 160 N.J.Super. 471, 481, 390 A.2d 639 (App.Div.1978). In order to dispense substantial justice on the merits, we reverse the order dismissing Spiegel's case and we remand for further proceedings in accordance with this decision.
Because we are reversing the order dismissing plaintiff's complaint, we note that Spiegel's settlements with independent contractors Dill, Colonial Oaks, and Guatarz do not necessarily absolve Leontarakis of liability. Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548, 559, 410 A.2d 674 (1980) ("Even when liability of one defendant is wholly vicarious, settlement with the primarily liable defendant may not necessarily release the other."). The general rule is that "a release of one tortfeasor will not release others who may also be liable to plaintiff for his harm unless the release is so intended or the plaintiff receives as a result thereof either full satisfaction or satisfaction intended as such." McFadden v. Turner, 159 N.J.Super. 360, 366, 388 A.2d 244 (App.Div.1978) (citing Breen v. Peck, 28 N.J. 351, 146 A.2d 665 (1958)).
The rationale of the rule  "that plaintiff is entitled to pursue all those who are independently liable to him for his harm until one full satisfaction is obtained"  is equally applicable whether the liability is actual or vicarious. Id. at 367, 388 A.2d 244; see also Newman v. Isuzu Motors Am., Inc., 367 N.J.Super. 141, 151, 842 A.2d 255 (App.Div.2004) ("[R]egardless of whether liability is independent or derivative, that liability is not extinguished by settlement with another tortfeasor unless a release of claims so provides or compensation for liability has been paid in full."); Zukowitz v. Halperin, 360 N.J.Super. *854 69, 74, 821 A.2d 527 (App.Div.2003) (noting plaintiff asserting negligence claim against building superintendent and vicarious liability claim against superintendent's employer "is permitted only one full recovery"). Of course, the trial court may order additional discovery, or such further proceedings as may be necessary, to determine the extent of Spiegel's potential recovery from Leontarakis.
Spiegel also contends the trial court erred in granting a pretrial motion, which precluded him from presenting trial evidence concerning the need for a second, larger retaining wall as an element of damages. Spiegel contends that the court-ordered retaining wall built by Leontarakis on his own property, which is forty feet long and eight feet high, is neither long enough nor high enough to provide sufficient lateral support for his property. According to Spiegel's experts, the retaining wall should be 120 feet long and 16 feet high.
On July 30, 1999, the trial court ordered Leontarakis to "construct a reinforced retaining wall to provide lateral support to the east side of Spiegel's property ...." And the parties entered into a consent order on February 1, 2000, which likewise required Leontarakis to "commence construction of a reinforced or better retaining wall ("the wall"), meeting township specifications ...." (Emphasis added.) The court also required Leontarakis to "submit complete plans and structural specifications for the construction of the wall to counsel for ... Spiegel no less than ten (10) days prior to the commencement of construction."
On February 11, 2000, Spiegel's counsel provided Leontarakis's counsel with a one-page report prepared by Spiegel's structural engineer, Peter D. Matera, indicating that the retaining wall to be built by Leontarakis should be sixteen feet high. The cover letter merely suggested that Leontarakis and his agents "consider" Matera's opinions before proceeding with the construction of the court-ordered retaining wall. Subsequently, on February 28, 2000, defendant Robert Dill sent specifications for the proposed retaining wall to Spiegel. Dill also advised: "we intend to start this wall in March and be finished (weather depend[e]nt) in April (at the latest)."
In April 2000, because construction of the retaining wall had not yet begun, Spiegel once again sought to compel Leontarakis to build the retaining wall. On May 25, 2000, the trial court ordered Leontarakis to "commence construction of a reinforced or better retaining wall ... meeting township specifications within ten (10) days of the removal of telephone, cable television, and/or electrical wires by Isadore Spiegel." The court-ordered retaining wall was finally completed by Leontarakis in June 2000. At a pretrial hearing in October 2003, the trial court granted the motion to limit Spiegel's damage claim, because the court-ordered retaining wall had been designed and built with Spiegel's "tacit approval." Spiegel appeals this ruling, but we perceive no basis to intervene.
Spiegel agreed in the February 1, 2000, consent order that the retaining wall should be built to Township specifications, not to the specifications of his experts. Thus, it would be unfair to allow Spiegel to argue to a jury that the court-ordered retaining wall was deficient after the wall was approved by the Township. See Middletown Twp. Policemen's Benevolent Ass'n Local 124 v. Twp. of Middletown, 162 N.J. 361, 367, 744 A.2d 649 (2000) (noting "the repudiation of one's ... position assumed is not permissible where that course would work injustice to another who, having the right to do so, has relied thereon" (internal quotation marks omitted)); see also Winberry v. Salisbury, 5 *855 N.J. 240, 255, 74 A.2d 406 ("This order was consented to by the attorneys for each party and it is therefore not appealable."), cert. denied, 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950).
In view of the foregoing, we affirm the pretrial order of October 10, 2003, but the order of involuntary dismissal is reversed, and the matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] Because Great Northern's declaratory judgment action was resolved prior to trial, the trial court referred to Isadore Spiegel as plaintiff and George Leontarakis as defendant. For the sake of consistency, we will do the same.
[2] Defendant Preferred Construction defaulted and did not present a defense at trial.
[3] Support "is lateral when the supported and supporting lands are divided by a vertical plane." Noone v. Price, 171 W.Va. 185, 298 S.E.2d 218, 221 (1982).
[4] A party wall is defined as "a wall of which two adjoining owners are tenants in common, or a wall which belongs entirely to one of the adjoining owners, subject to an easement of the other owner to have it maintained as a dividing or supporting wall between the two tenements." Freedman v. Kensico Realty Co., 99 N.J. Eq. 115, 117, 131 A. 916 (Ch.1926). In this case, there appears to be no dispute that Spiegel is the sole owner of the damaged wall.
[5] The act of 1871 was a predecessor to the current statute, N.J.S.A. 46:10-1. The current statute is substantively identical to the act of 1871.