Quincy Walters and Elliott NEAL, Appellants,

v.

UNITED STATES, Appellee.

Nos. 03–CF–539, 03–CF–597.

District of Columbia Court of Appeals.

Submitted Oct. 26, 2007.

Decided Nov. 15, 2007.

**102**

Matthew C. Leefer was on the brief, Boonsboro, Maryland, for appellant Walters.

Peter H. Meyers was on the brief, for appellant Neal.

Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III, Elizabeth Trosman, John M. Cummings, and Bernard J. Delia, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and GLICKMAN, Associate Judges, and NEWMAN, Senior Judge.

PER CURIAM:

A jury found appellants each guilty of conspiracy to commit armed robbery, four counts of armed robbery, one count of assault with intent to commit armed robbery, and related weapons offenses, all arising from their actions on the night of March 7, 2001, when (with two others) they set out to commit robberies after "everybody said we needed money." Walters drove the car carrying the group, and Neal held a shotgun in the front seat as the four men successively robbed Tracy Hill (of money, milk, beer, and cigarettes),[1] Demetrius McIntyre (of clothing and a cell phone), and Theodore Hines and Keith Dortch (of money, a coat, and rings), besides assaulting Danette King with intent to rob.

■ Appellants' main argument on appeal, and the only one necessitating this brief published opinion, is that the trial judge erred by instructing the jury as part of aiding and abetting that they could be held liable for the acts of others that were the natural and probable consequence of a crime in which they intentionally took part. The government concedes that this was error in light of *Wilson–Bey v. United States*, 903 A.2d 818 (D.C.2006) (en banc).[2] We now make explicit what *Kitt v. United States*, 904 A.2d 348 (D.C.2006), later held implicitly, which is that the *Wilson–Bey* holding applies equally to the crimes of robbery and assault with intent to rob, of which appellants were convicted. *See id.* at 356 (holding "natural and probable consequences" instruction erroneous as to all specific intent crimes; "where a specific

1. Neal had noticed Hill walking and counting money (change from a purchase she had made), and pointed her out as a first object of prey.

2. *Wilson–Bey* held that application of the "natural and probable consequences" portion of the aiding and abetting instruction was

erroneous in the context of a premeditated murder charge, because the government was required to prove that the accomplice personally had the mental state necessary to commit the offense, *i.e.,* specific intent to kill and deliberation. *See* 903 A.2d at 830.

*mens rea* is an element of a criminal offense, a defendant must have that *mens rea* himself to be guilty of that offense, whether ... as the principal actor or as an aider and abettor"); *(Earl) Johnson v. United States,* 756 A.2d 458, 462 (D.C. 2000) (element of robbery is that defendant took property with specific intent to steal it).[3]

 The government argues, however, that appellants did not object to the natural and probable consequences instruction at trial, and therefore must show plain error to gain reversal of their convictions. *See* Super. Ct.Crim. R. 30; *Headspeth v. United States,* 910 A.2d 311, 318 (D.C. 2006). We agree,[4] and further hold that appellants have not shown that the error affected their substantial rights, a showing necessary to win reversal under that standard. *See (Joyce) Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). First, the testimony of conspirator-turned-state's-witness James Simmons, which appellants concede the jury credited, established without question each appellant's specific intent to participate in the robberies and assault with intent to rob, beginning with their joint resolve to "go rob someone" (all four men having admitted needing money), and continuing through the succession of robberies as Walters drove the car that facilitated the spree and

Neal carried a shotgun in the front seat, even pointing out the first victim.

Moreover, appellants were charged with and convicted of conspiracy, and under the *Pinkerton* instruction[5] given to the jury they could be convicted of the substantive crimes charged even if they did not take part directly in them, so long as a co-conspirator committed the crime "in furtherance of, and as a natural consequence of, the conspiracy." *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA 4.02A (4th ed.2007). *Wilson–Bey* did not question this court's continued adherence to the doctrine of vicarious liability, *see, e.g., Gatlin v. United States,* 925 A.2d 594, 599 (D.C.2007), indeed distinguishing it from aiding and abetting and the concept of natural and probable consequences as applied thereto.[6] *See Wilson–Bey,* 903 A.2d at 839–42. Here, upon convicting appellants of conspiracy, the jury had ample grounds in the evidence from which to find that they committed the armed robberies and assault in furtherance of the common plan and as a natural consequence of it.

It remains for us to reject appellants' claim of insufficient evidence, resting as it does almost entirely on the asserted lack of credibility of Simmons. Whether to believe his testimony was a matter for the jury to decide, *see, e.g., Dickerson v. United States,* 650 A.2d 680, 683 (D.C.1994),

---

**3.** As the government concedes, the error in this case also affected appellants' conviction for possession of a firearm during a crime of violence, because it was predicated on the specific intent crimes of armed robbery and assault with intent to commit armed robbery.

**4.** The mere fact that the jury *inquired* about the applicability of the natural and probable consequences language to a charge (*i.e.,* armed carjacking, of which appellants were acquitted), in turn prompting an additional instruction by the judge to which no objection

was made, did not apprise the judge of any instructional error she had committed, much less the error appellants now claim.

**5.** *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

**6.** Because the government had not pursued the *Pinkerton* theory in *Wilson–Bey,* the jury was not instructed on it. *See* 903 A.2d at 839 n. 39.

made aware of whatever incentives he may have had to fabricate.

*Affirmed.*