**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3713-19

ESTATE OF MARC COOPER
AND JEAN ABBOTT,

      Plaintiff-Appellant,

v.

AHS HOSPITAL CORPORATION/
MORRISTOWN MEDICAL
CENTER[1] and MARIAN LEE, in
her capacity as an employee of
Morristown Medical Center and
her individual capacity,

      Defendants-Respondents.

_____

      Submitted January 6, 2022 – Decided June 28, 2022

      Before Judges Mitterhoff and Alvarez.

      On appeal from the Superior Court of New Jersey, Law
      Division, Morris County, Docket No. L-0655-18.

      Bedi Rindosh, Attorneys-at-Law, attorneys for
      appellant (Jason A. Rindosh, on the briefs).

---

[1] Improperly pled as Morristown Medical Center.

Weber Gallagher Simpson Stapleton Fires & Newby, LLP, attorneys for respondent AHS Hospital Corporation/ Morristown Medical Center (Kenneth M. Brown, of counsel and on the brief; Anna K. Papamarkos, on the brief).

PER CURIAM

Plaintiffs Estate of Marc Cooper and Jean Abbott appeal from an April 3, 2020 order granting defendant Morristown Medical Center's (MMC) motion for summary judgment. After a careful consideration of the record and the applicable law, we reverse and remand.

We discern the following facts from the record. On January 13, 2017, Marc Cooper suffered a drug overdose at the residence of Marian Lee, where he had been renting a room with his girlfriend, Michelle Lehnert. This resulted in Cooper's hospitalization at MMC. Coincidentally, Lee worked as an emergency room nurse at MMC and was on duty the day of Cooper's hospitalization. After Cooper's admission to the hospital, through a process that remains unclear, a "Patient/Family Contact List" was generated listing "Roger Cooper (father) as the primary contact and Marian Lee as the secondary contact." Roger Cooper

had arrived at the hospital prior to Cooper's mother, Abbott. Plaintiffs allege—and MMC does not dispute—that no one signed the contact form.[2]

Later that day, Cooper's sister texted Lee seeking the keys to Cooper's vehicle and his cell phone, which Lee purportedly failed to provide. Cooper's family also alleged that Lee entered Cooper's hospital room twice on January 13 to inquire about his status, including while Cooper's family members were present, and therefore had access to Cooper's medical records. At some point following these two visits, Cooper's mother and sister went to the nurses' station and requested that no one enter Cooper's hospital room except for his treatment team and immediate family. Plaintiffs do not allege Lee entered Cooper's hospital room again. According to plaintiffs' expert report, "Lee did not provide any direct care to Marc Cooper during his hospital stay." On January 15, 2017, two days after his admittance to the hospital, Cooper died from the overdose.

On April 6, 2018, plaintiffs filed a nine-count complaint against MMC and Lee alleging breach of privacy, conversion, unjust enrichment, legal fraud, negligence/implied bailment, intentional infliction of extreme emotional distress, negligence/respondeat superior, common law right to privacy, and

---

[2] Despite this stipulation, the record contains a copy of the Family Contact List that features a signature, allegedly Abbott's, at the bottom of the second and final page.

A-3713-19

punitive damages.  On October 1, 2018, plaintiffs sent MMC discovery requests for "Form C Interrogatories," "Supplemental Interrogatories," and a "First Notice to Produce."  After filing an Answer, Lee filed an Offer of Judgment which was accepted by plaintiffs, resulting in a November 13, 2018 settlement of the claims against Lee only.

As to MMC, the suit alleged only breach of privacy, intentional infliction of emotional distress, negligence, breach of the common law right to privacy, and punitive damages.[3]  On April 23, 2019, MMC filed an unopposed motion to alter the track assignment of the matter to medical malpractice Track III. Plaintiffs then filed the appropriate Affidavit of Merit (AOM) and a supplemental AOM on May 30, 2019, and July 2, 2019, respectively.

On August 6, 2019, MMC moved to dismiss the complaint, which the trial court denied.  Plaintiffs filed a motion to compel, alleging MMC's discovery responses were incomplete.  On November 8, 2019, the court granted the motion, ordering MMC to "provide the complete medical records of Marc Cooper" and "produce a privilege log for any documents withheld from discovery

---

[3]  MMC attempted to file its answer on July 25, 2018; however, due to an issue with the eCourts filing, this effort was unsuccessful, resulting in default. Plaintiffs agreed to vacate the default, and MMC filed its answer on March 26, 2019.

production[.]"  On November 15, 2019, plaintiffs sent MMC "a Second Notice to Produce with demands specific to their policies, procedures and protocols [concerning] patient privacy, as well as records related to the training and supervision of Marian Lee."

Before complying with the Second Notice to Produce, MMC moved for summary judgment on January 10, 2020.  That same day, MMC's counsel represented to plaintiffs' counsel via email that the discovery pertaining to the "requested policies and procedures" would be provided in the near future.  On January 22, 2020, following MMC's purported failure to produce the desired discovery materials, "[p]laintiffs filed a motion to strike [MMC's] [a]nswer for failure to provide discovery."  On February 26, 2020, the court entered a Consent Order that terminated plaintiffs' pending discovery motion, extended the final discovery end date until August 15, 2020, required MMC to provide the outstanding discovery no later than March 6, 2020, and extended the time for service of plaintiffs' expert report until May 15, 2020.  On March 6, 2020, MMC responded to plaintiffs and produced the requested discovery.  On April 3, 2020, after a hearing, the court granted MMC's motion for partial summary judgment, dismissing all counts with prejudice.  The court found "[p]laintiffs have failed to establish a prima facie case that [MMC] breached any duty owing to them.

5

The [p]laintiffs [also had] failed to establish a prima facie case of liability under respondeat superior."

On April 17, 2020, plaintiffs nevertheless served MMC with "the expert report of Janice Schwartz, MSN, RN-BC[.]" On May 12, 2020, the court denied plaintiffs' motion for reconsideration. This appeal followed.

On appeal, plaintiffs present the following arguments for our consideration:

> POINT I
>
> THE [TRIAL] COURT'S ORDER GRANTING SUMMARY JUDGMENT SHOULD BE REVERSED BECAUSE DEFENDANT MMC OWED PLAINTIFF[S] A NON-DELEGABLE DUTY TO PROTECT PATIENT PRIVACY THAT WAS VIOLATED.
>
> POINT II
>
> THE [TRIAL] COURT'S ORDER GRANTING SUMMARY JUDGMENT SHOULD BE REVERSED BECAUSE DEFENDANT MMC VIOLATED ITS DUTY TO PREVENT EMPLOYEES FROM INVADING MARC COOPER'S PRIVACY RIGHTS.
>
> POINT III
>
> THE [TRIAL] COURT'S ORDER GRANTING SUMMARY JUDGMENT SHOULD BE REVERSED BECAUSE DEFENDANT MMC IS RESPONSIBLE FOR THE TORTS OF ITS EMPLOYEES UNDER THE DOCTRINE OF RESPONDEAT SUPERIOR.

A-3713-19

POINT IV

THE [TRIAL] COURT'S ORDER GRANTING SUMMARY JUDGEMENT SHOULD BE REVERSED BECAUSE DEFENDANT MMC IS LIABLE FOR THE TORTS OF ITS EMPLOYEES UNDER APPLICABLE AGENCY PRINCIPLES.

POINT V

THE [TRIAL] COURT SHOULD HAVE DETERMINED THAT CO-DEFENDANT LEE ADMITTED FAULT BY ACCEPTANCE OF HER OFFER OF JUDGMENT.

POINT VI

THE [TRIAL] COURT ORDER GRANTING SUMMARY JUDGMENT SHOULD BE REVERSED BECAUSE DISCOVERY WAS ONGOING.

POINT VII

THE [TRIAL] COURT ORDER DENYING RECONSIDERATION OF THE SUMMARY JUDGMENT ORDER SHOULD BE REVERSED BASED ON THE NEW EVIDENCE SUBMITTED.

We review a trial court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and

7

that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

A.

Initially, we reject plaintiffs' argument that MMC's duty to protect patient privacy was non-delegable. "In cases involving a significant risk of grave harm, . . . the duty owed to the public may be too important to allow its delegation . . . and therefore the legislature or the court may impose a nondelegable duty on the principal." Great N. Ins. Co. v. Leontarakis, 387 N.J. Super. 583, 591 (App. Div. 2006). "[U]nder modern principles of agency law[,] liability of an employer for the torts of an employee acting outside the scope of his [or her] employment is permitted when the conduct violates a non-delegable duty of the employer." J.H. v. Mercer Cnty. Youth Det. Ctr., 396 N.J. Super. 1, 17 (App. Div. 2007). "The primary reason for imposing a nondelegable duty on the principal is that the duty is of extraordinary importance to the public." Leontarakis, 387 N.J. Super. at 592.

The test for a non-delegable duty is a fact-specific inquiry and turns on considerations such as "the relationship among the relevant parties, . . . the nature of the risk, warranted by the opportunity and ability to exercise care, [and

whether the duty is] grounded in the public policy of [New Jersey]." Davis v. Devereux Found., 209 N.J. 269, 278 (2012); see, e.g., J.D.A. v. N.J. Dep't of Corr., 189 N.J. 413, 417 (2007) (acknowledging that New Jersey Department of Corrections bears "a non[-]delegable duty to assure adequate medical care to inmates," which includes, inter alia, "maintaining and making available to inmates complete and accurate medical records[.]"); In re Stransky, 130 N.J. 38, 44 (1992) (finding an "attorney's fiduciary responsibility for client trust funds [to be] a non-delegable duty.")

Here, our inquiry centers on whether patient confidentiality qualifies as a matter of "extraordinary importance to the public." See Leontarakis, 387 N.J. Super. at 592. We acknowledge that "the Hospital Patients' Bill of Rights Act incorporates the privilege and protects the right of hospital patients to privacy and confidentiality of their medical records to the extent consistent with providing adequate medical care." Smith v. Datla, 451 N.J. Super. 82, 103 (App. Div. 2017). However, while no one disputes the importance of shielding a patient's medical records from public view, plaintiffs do not present persuasive evidence that this court should overturn the presently applicable standard—a duty to take "reasonable steps to maintain the confidentiality of [a] plaintiff's medical records"—and replace it with the more stringent non-delegable duty

standard. See Est. of Behringer v. Med. Ctr. at Princeton, 249 N.J. Super. 597, 642 (App. Div. 1991). This step "would . . . represent a significant expansion of New Jersey tort law" as it would expose hospitals and medical centers to absolute liability for breaches of medical privacy committed by their employees—regardless of the "[m]easures taken by the employer to guard against" such breaches. Davis, 209 N.J. at 289.

In addition, we are mindful that we "should normally defer to the [New Jersey] Supreme Court with respect to the creation of a new cause of action" and therefore, we decline to hold—for the time being—that hospitals possess a non-delegable duty to ensure patient confidentiality. Riley v. Keenan, 406 N.J. Super. 281, 297 (App. Div. 2009).

### B.

We also reject plaintiffs' argument that Lee's Offer of Judgment should be deemed an admission of liability. "An offer of judgment pursuant to Rule 4:58 is designed to encourage parties to settle claims that ought to be settled, saving time, expense, and averting risk, while the specter of the continued prosecution of the lawsuit remains." Serico v. Rothberg, 234 N.J. 168, 179 (2018). These settlement offers, however, are not evidence of liability absent a specific provision in the settlement saying so. Petro-Lubricant Testing Labs., Inc. v.

Adelman, 233 N.J. 236, 262 (2018). "A settlement generally 'reflects ambiguously on the merits of the action' and is not a determination of whether the allegations are true or false." Ibid. (quoting McCubbrey v. Veninga, 39 F.3d 1054, 1055 (9th Cir. 1994)). Thus, plaintiffs' contention that MMC's liability "was established as a matter of law" based on the settlement agreement has no merit and requires no further discussion. See R. 2:11-3(e)(1)(E).

C.

Although we conclude that MMC does not have a non-delegable duty to ensure patient confidentiality and that the offer of judgment did not conclusively establish MMC's liability, we find nonetheless that we must reverse and remand the case because granting summary judgment was premature. "Although Rule 4:46-1 permits a party to move for summary judgment before the close of discovery, '[g]enerally, summary judgment is inappropriate prior to the completion of discovery.'" Branch v. Cream-O-Land Dairy, 459 N.J. Super. 529, 541 (App. Div. 2019) (alteration in original) (quoting Wellington v. Est. of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003)). "A motion for summary judgment is not premature merely because discovery has not been completed, unless plaintiff is able to 'demonstrate with some degree of particularity the likelihood that further discovery will supply the missing

11

elements of the cause of action.'" Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (quoting Wellington, 359 N.J. Super. at 496).

Here, discovery was unfinished at the time the court granted MMC's motion for summary judgment. In particular, Lee herself had yet to be deposed. The record is therefore incomplete concerning vital facts including the preparation of the Patient/Family Contact List. Plaintiffs advance the theory that, if Lee and/or other MMC staff played a role in its creation, liability could attach insofar as the list authorized Lee to be present in Cooper's hospital room.

In its written order granting summary judgment, the court held:

> [T]here was a "Patient Family [C]ontact form" that was completed (by whom it was completed remains an unanswered question) which had Lee's name on it as a person allowed to visit Cooper's room. The record is inadequate to conclude who prepared the form, and when, and who provided the information contained thereon. The form, however, is not, for these reasons given any weight in the [c]ourt's analysis. While it may have been relevant as to [p]laintiffs' claims against Lee, it has no relevance to the claims against [d]efendant. . . . [N]o evidence has been presented to the [c]ourt to show how or in what manner that form was used/not used by hospital staff to allow or deny access to Cooper's hospital room. The court further notes that, in view of the busy and sometimes fast moving efforts of the treatment team to provide care to . . . Cooper, described by . . . Abbott in her deposition, and the constant traffic of personnel, it would be contrary to logic and common sense to conclude that the hospital would be under a duty to essentially have guards

12

stationed at every hospital room as a matter of course
to deny entry to other hospital health care professionals
as efforts are underway to save a patient's life.

Ironically, the court declined to accord any weight to the Contact List because "[t]he record [was] inadequate" and plaintiffs failed to present evidence as to how the form was generated and subsequently used by hospital staff. This was error. Discovery was ongoing, and plaintiffs still sought precisely the sort of evidence that would cure the inadequacies the trial court cites to justify omitting the Contact List from its analysis. Had discovery continued until Lee's deposition, plaintiffs could have gleaned the information they needed to defeat summary judgment. See Badiali, 220 N.J. at 555.

Lee, however, refused to be deposed until the resolution of MMC's summary judgment motion. Cooper's medical records consisted of a "hybrid chart" that featured both handwritten and electronic elements; plaintiffs' expert alleged in her report that "reviewing an audit trail" would have enabled the parties to determine if "a breach in the privacy of [Cooper's] electronic medical record" occurred. Given the present uncertainty as to whether Lee accessed Cooper's medical records, this case represents a clear instance where additional, relevant information may have been obtained had the court permitted discovery to continue.

13

D.

The curtailing of discovery denied plaintiffs an opportunity to cure the inadequate record the court cited in support of its summary judgment decision, especially when it came to plaintiffs' respondeat superior and apparent agency claims.

The Restatement provides:

> A master or other principal who is under a duty to provide protection for or have care used to protect others and who confides the performance of such duty to a servant or other person is subject to liability to such others . . . for harm caused to them by the failure of such agent to perform the duty.
>
> [Restatement (Second) of Agency § 214 (Am. Law Inst. 2018).]

"Under respondeat superior, an employer can be found liable for the negligence of an employee causing injuries to third parties, if, at the time of the occurrence, the employee was acting within the scope of his or her employment." Carter v. Reynolds, 175 N.J. 402, 408-09 (2003). The court found Lee had not been acting within the scope of her employment when she twice accessed Cooper's hospital room and held plaintiffs "alleged no facts that would lead the [c]ourt to determine that the [p]laintiff reasonably believed that [Lee] came to Cooper's hospital room on the authority of [MMC]."

14

Plaintiffs argue, however, Lee acted with apparent authority to enter Cooper's hospital room "by use of the instrumentalities provided to her by . . . MMC, namely her identification badge and scrubs work uniform."

To invoke apparent authority,

> the plaintiff must establish, (1) that the appearance of authority has been created by the conduct of the alleged principal and it cannot be established "alone and solely by proof of [conduct by] the supposed agent, "(2) that a third party has relied on the agent's apparent authority to act for a principal, and (3) that the reliance was reasonable under the circumstances.
>
> [Mercer v. Weyerhaeuser Co., 324 N.J. Super. 290, 318 (App. Div. 1999) (alteration in original) (emphasis added) (citations omitted).]

Plaintiffs' theory of apparent authority may have been advanced by the completion of discovery concerning MMC's training and procedures for preserving confidentiality, and Lee's understanding of her concerns regarding a patient whom she knew personally but was not under her care. Abbott may have "reasonably believed that . . . Lee came to Cooper's hospital room on the authority of [MMC]." However, as Lee had not been deposed, the trial court's dismissal of the claims was simply premature as it was based on an incomplete record.

15

Because we find that the court prematurely granted summary judgment, plaintiffs' argument regarding their motion for reconsideration is moot, and we need not address it.  On remand, discovery should include Lee's deposition.  To the extent we have not addressed plaintiffs' remaining arguments, we find they lack sufficient merit to warrant discussion in a written opinion.  See R. 2:11-3(e)(1)(E).

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3713-19