**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 09-1239 and 09-1321

———————

MON CHERI BRIDALS, INC.

v.

WEN WU, individually; WEN WU d/b/a JACQUELIN BRIDALS;
WEN WU, d/b/a PRIVATE COLLECTION; WEN WU, d/b/a CHRISTINA WU;
WEN WU, d/b/a LABELLE FASHIONS; WEN WU d/b/a TIFFANY COLLECTION;
ABC COMPANIES 1-10, fictitious designations;
FORMOSA SUNRISE CORPORATION;
MDTW, INC.; UNITED WU ENTERPRISES, INC.;
BERNIE KAITZ; MIRAGE COLLECTION, INC.

Wen Wu, individually, and Formosa Sunrise Corporation,
and MDTW and United Wu Enterprises, Inc.,

Appellants in No. 09-1239

Mon Cheri Bridals, Inc.,

Appellant in No. 09-1321

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-04-cv-01739 and
D.C. Civil No. 3-05-cv-05934)
District Judge: Hon. Anne E. Thompson

———————

Argued April 14, 2010

BEFORE: FISHER, and COWEN, Circuit Judges,
and DITTER*, District Judge

(Filed: June 4, 2010)

Craig S. Hilliard, Esq. (Argued)
Stark & Stark
P.O. Box 5315
Princeton, NJ 08543

*Counsel for Mon Cheri Bridals, Inc.*

Joseph F. Posillico, Esq. (Argued)
Fox Rothschild
10-75
2000 Market Street, 20th Floor
Philadelphia, PA 19103

*Counsel for Wen Wu, individually,
and Formosa Sunrise Corporation,
and MDTW and United Wu Enterprises, Inc.*

---

OPINION

---

COWEN, Circuit Judge

Mon Cheri Bridals, Inc. ("Mon Cheri") designs and sells wedding and special

occasion dresses, for which it has obtained various copyrights and trademarks. Mon

---

\* Honorable J. William Ditter, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Cheri had reason to believe that Wen Wu, through various entities that he controlled (collectively, the "Wu defendants"), had copied certain dresses and sold them as Mon Cheri dresses. Mon Cheri filed an action against the Wu defendants seeking damages and injunctive relief for copyright and trade dress infringement, unfair competition, and breach of contract. (Civil Action No. 04-1739 (AET)). Subsequently, Mon Cheri discovered facts that led it to believe that Wu and another retailer, Bernie Kaitz, had conspired to copy an entire line of Mon Cheri dresses, Mon Cheri's Montage line. Mon Cheri filed a second action against Kaitz and the company that Kaitz controlled, Mirage Collection, Inc. (collectively, the "Mirage defendants"), and the Wu defendants seeking damages and injunctive relief for unlawful passing off of its Montage dress line. (Civil Action No. 05-5934 (AET)). The District Court consolidated the two actions.

Ultimately, Mon Cheri settled with the Mirage defendants (the "Agreement") and electronically filed a stipulation of dismissal. Mon Cheri then proceeded in a jury trial against the Wu defendants on its breach of contract, copyright infringement, and passing off claims. The jury returned a verdict in Mon Cheri's favor on each claim, awarding Mon Cheri $324,000 in compensatory damages and $375,000 in punitive damages. At the conclusion of the trial, the District Court vacated the award for punitive damages, denied Mon Cheri's request for treble damages under the Lanham Act and New Jersey law, and denied Mon Cheri's request for attorneys' fees.

On appeal, the Wu defendants assert that: (1) there is insufficient evidence to establish the validity of the copyrights at issue, (2) there is insufficient evidence of copyright infringement, (3) the District Court erred in denying their request to stay the trial until Mon Cheri produced documents from its dress designer, (4) the District Court erred in permitting Mon Cheri to conceal the terms of the Agreement from the jury, yet permitting Mon Cheri to link the Wu defendants to the Mirage defendants, (5) there is insufficient evidence to support the passing off claim against the Wu defendants when improperly admitted hearsay evidence is struck from the record, and (6) there is insufficient evidence to establish the damages awarded. Mon Cheri asserts that the District Court erred in: (1) vacating the award of punitive damages, (2) denying attorneys' fees, and (3) denying treble damages on the passing off claim. For the reasons set forth below, we will affirm the District Court in all respects.

## DISCUSSION

### A. Copyright Infringement

"To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005) (quoting *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002)). The Wu defendants contend that Mon Cheri did not establish either prong of their copyright infringement claims.

4

### 1. Copyright Validity

The introduction of a certificate of registration from the Copyright Office is *prima facie* evidence of validity. *See* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration . . . shall constitute prima facie evidence of the validity of the copyright . . . ."); *accord Williams Elecs., Inc. v. Arctic Int'l, Inc.*, 685 F.2d 870, 873 (3d Cir. 1982). Moreover, "[p]ossession of a registration certificate creates a rebuttable presumption that the work in question is copyrightable." *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir. 1989). The parties do not dispute that Mon Cheri introduced twenty-nine certificates of registration into evidence, thereby establishing *prima facie* validity with respect to those copyrights. The burden shifted to the Wu defendants to show why the copyright claims were invalid. The Wu defendants contend that the copyrights are invalid because Mon Cheri committed fraud on the Copyright Office and because the copyrighted material lacks originality.

### a. Fraud on the Copyright Office

Fraud on the Copyright Office is an affirmative defense to claims of copyright infringement. To establish this defense, a defendant must show that in applying for the copyright at issue the applicant knowingly or intentionally failed to disclose a material fact. *See Fonar Corp. v. Domenick*, 105 F.3d 99, 105 (2d Cir. 1997) (explaining that with respect to the affirmative defense of fraud upon the Copyright Office, "the presumption [of validity] may be overcome only by 'proof of deliberate misrepresentation'") (quoting

5

*Whimsicality, Inc.*, 891 F.2d at 455); *accord Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F. Supp. 125, 142-43 (D.N.J. 1982). The omission must be intentional. *See Whimsicality*, 891 F.2d at 456 ("It is the law of this Circuit that the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitutes reason for holding the registration invalid . . . .") (internal quotation marks omitted). An applicant's "mere inadvertence" is insufficient to establish this defense. *Id.* at 455 (explaining that the presumption of validity "generally is not overcome by an 'innocent misstatement'"); *accord Raquel v. Educ. Mgmt. Corp.*, 196 F.3d 171, 177 (3d Cir. 1999) ("[A]n inadvertent and immaterial misstatement will not invalidate a copyright registration, a proposition on which there is broad consensus in the federal courts." (citations omitted)); *Imperial Laces Inc. v. Westchester Lace Inc.*, 95-CV-5353 (BSJ), 1998 WL 830630, *2 n.4 (S.D.N.Y. Nov. 30, 1998) (rejecting fraud on the Copyright Office because the omission "appears to have been the result of mere inadvertence rather than fraud").

At trial, the Wu defendants asserted this defense, contending that Mon Cheri failed to disclose that its works were derivative rather than original, as required in the application, and that this omission constituted fraud on the Copyright Office. In particular, they pointed to testimony from Mon Cheri's designer, Ivonne Dome, that one of the flower and vine motifs incorporated into the embroidery and bead work for dress

6

number 21917 was not her original work.[1]  The Wu defendants contend that Mon Cheri's failure to disclose this information constituted fraud.

There is no evidence that Mon Cheri knowingly or intentionally omitted this information.  Yolanda Carita, Mon Cheri's Director of International Sales, assisted Mon Cheri's attorneys with preparation of copyright applications and signed those applications as Mon Cheri's agent.  Carita testified about the standard processes in place for the creation of new Mon Cheri dress designs.  Dome created embroidery or bead patterns and dress styles and then presented them to Carita, Mon Cheri's owner Steven Lang, and others, who then together collaborated on the final design.  Dome created numerous original designs and worked on her initial designs independently, sometimes sketching until three or four in the morning.  No one directly supervised Dome when she sketched.  Thus, no one observed Dome incorporating public elements into her designs and Dome never indicated that she had.  Dome's final work product (the embroidery or bead patterns plus style of dress) always had a distinct look such that it could be distinguished from dresses from other designers.  Carita relied on this process for her basis for attesting to the originality of Dome's work.  (Mar. 25, 2008 Tr. at 112, 122-23, 126.)

Lang, the founder and owner of Mon Cheri, also signed the copyright applications.  He testified that the Montage dress line, designed exclusively by Dome, had a very

---

[1]    The Wu defendants assail several of Mon Cheri's copyrights; however, they focus their attention on the copyright for the embroidery pattern on dress number 21917.

specific and identifiable look. (Mar. 26, 2008 Tr. at 13.) Lang's testimony regarding the design process confirmed Carita's testimony and he specifically testified about the design of dress number 21917. (*Id*. at 30-36.) Dome modified the embroidery and bead patterns several times before the design team accepted the final product. She changed the thread color and type several times as well. (*Id*. at 32; Apr. 1, 2008 Tr. at 35.) Lang observed her create the basic sketch for the embroidery and bead patterns and the modifications were based on this first sketch.[2] (Mar. 26, 2008 Tr. at 32-35.) None of the design team had seen an embroidery and bead pattern of that nature prior to Dome's

---

[2] On appeal, the Wu defendants seek a new trial on the ground that the District Court's denial of their discovery motion regarding Dome's sketches resulted in an unfair trial. This challenge lacks merit.

It appears that neither of the parties engaged in much discovery until approximately two months before trial. Both parties then filed discovery-related motions, including the motion now at issue on appeal. The parties stipulated to a discovery schedule (including depositions of key witnesses, such as Wu, Lang, and Dome) and to the voluntary withdrawal of their motions. (A-I at 916-19.) The Wu defendants discovered that Dome created sketches during their deposition of her, which occurred just two weeks before trial. Dome stated that no one from Mon Cheri had asked her to produce the sketches but that Mon Cheri would have duplicates of anything in her possession. Dome indicated that most of her records were kept in her basement and were destroyed by flooding. Under these circumstances, we will not fault the District Court for determining that no discovery violation occurred. Moreover, the Wu defendants did not raise this discovery issue with the District Court until their post-trial motion for a new trial.

The Wu defendants argue that Mon Cheri ignored a document request served on June 3, 2006. It is unclear whether this request was actually served on that date. The document is dated May 3, 2006, and was not filed with the District Court until March 23, 2008.

8

creation. (Apr. 1, 2008 Tr. at 38.) Mon Cheri received industry awards for dress number 21917.

Dome testified that her embroidery and bead patterns are inspired by observing her surroundings, including natural objects such as the sediment patterns on a rock. (Mar. 27, 2008 Tr. at 194.)[3] Additionally, she sometimes found inspiration from public use elements. (*Id*. at 212.) She then used those elements and others to create the patterns on her dresses, which could involve rearranging elements, changing their size, style, and quantity, adding elements, and other design techniques. (*Id*. at 211-13.) She was not involved with the copyright application process, though she knew that Mon Cheri protected her work.

Against this evidence, the Wu defendants failed to present any evidence of Carita's or Lang's intent to commit fraud on the Copyright Office. Nor was there any evidence of concealment generally. Further, the omission likely was not material, as the Copyright Office grants copyrights for derivative work. *See Imperial Laces*, 1998 WL 830630, at *2 n.4 ("Although required to do so, Imperial failed to identify lace design No. 8191 as a derivative work on its copyright application. As this appears to have been the result of mere inadvertence rather than fraud, however, this omission in no way invalidates Imperial's copyright registration.").

---

[3]    Dome was in China working for Mon Cheri on a new dress line during the trial. The parties presented her deposition testimony to the jury. The citations above refer to that testimony as presented during trial.

### b. Sufficient Originality

"The *sine qua non* of copyright is originality." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* (citing 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A], [B] (1990)). The "requisite level of creativity is extremely low; even a slight amount will suffice." *Id.*; *see also Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 765 (2d Cir. 1991) (explaining that "only an 'unmistakable dash of originality need be demonstrated, high standards of uniqueness in creativity are dispensed with'") (quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1321 (2d Cir. 1989)). Further, "the mere borrowing of elements from previous works will not defeat copyrightability as long as the author has devised a new version of the work or has otherwise rearranged or transformed it so as to have made an original contribution." *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1518 (1st Cir. 1996).

The jury properly concluded that the works for which Mon Cheri sought copyrights were sufficiently original. According to Dome, she found inspiration from many sources and in the case of dress number 21917, she was inspired by a particular flower and vine drawing. She used these two common elements, but rearranged them, changed their size, color, and frequency, and created an embroidery and bead pattern that

10

she considered to be her original work. This work is sufficiently original under copyright law. *See Folio*, 937 F.2d at 764-65 (holding that a fabric design that consisted of roses that were available in the public domain, but were rearranged for the particular fabric design at issue "required little creative input" but still was "original work and, as such, copyrightable"); *Imperial Laces*, 1998 WL 830630, at *2 (holding that a lace design that incorporated a prior lace design within it, but that included a heavy liner, thereby giving the overall pattern a "reticulated or squiggly appearance" was sufficiently original). The testimony from Carita and Lang confirmed Dome's description of her design process. Moreover, the Wu defendants' own expert witnesses, two dress designers, stated that they designed their dresses in the same manner and considered them to be original. (Mar. 27, 2008 Tr. at 173-75; Mar. 31, 2008 Tr. at 166-68.)

The cases that the Wu defendants rely upon are distinguishable. The copyright applicant in *Garner v. Sawgrass Mills Ltd. Partnership*, Civ. No. 3-94-307, 1994 WL 829978, *8-9 (D. Minn. Dec. 22, 1994), had first-hand knowledge of the prior work and failed to disclose it. *Id*. (invalidating for lack of originality as the applicant, who had a copy of the incorporated prior work in his possession, failed to disclose the incorporation of that prior work). Neither Carita nor Lang had any knowledge of the common elements that Dome incorporated. Further, in *Towle Manufacturing Co. v. Godinger Silver Art Co.*, 612 F. Supp. 986, 991 (S.D.N.Y. 1985), the court invalidated a copyright for a baby bottle that consisted of five glass etchings, all of which were prior work widely available

11

on the market, to which the applicant made no modifications. Dome testified that the patterns that she created, which incorporated public use elements, were entirely original, as were her bead and thread color choices. These modifications are sufficient to support a finding of originality. *See Folio*, 937 F.2d at 764-65.

### 2. Unauthorized Copying

A plaintiff establishes unauthorized copying by showing that the defendant "had access to a copyrighted work" and "that there are substantial similarities between the two works." *Dam Things from Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 561 (3d Cir. 2002). There is ample evidence to establish both access to the copyrighted work and substantial similarity between Mon Cheri's copyrighted work and the embroidery patterns and dress styles of the Mirage dresses. The Wu defendants had access to the copyrighted material—the embroidery patterns applied to various Montage dresses—through many public sources, such as Mon Cheri's website, Mon Cheri's catalogues, wedding magazines, national advertisements, trade shows, and dresses on display at national award ceremonies. (*See* Pl. Supp. App'x. Ex. O at 35-36; Ex. R at 18; Ex. S at 181-82.) In fact, Wu admitted that if he wanted to copy the dresses of other manufacturers he could, although he disclaimed doing so. (*See* Pl. Supp. App'x. Ex. P at 43-44.) Moreover, there is evidence that Wu obtained Montage catalogues and used them for this particular purpose. (*See* Pl. Supp. App'x. Ex. Q at 43-44.) With respect to similarities between the dresses and the applied embroidery patterns, several witnesses testified that the Montage

12

and Mirage dresses were "exactly" alike or the same (*see* Pl. Supp. App'x. Ex. A; Ex. D at 44-45) and witnesses for the Wu defendants, including Wu himself, testified that they were "a lot alike" or substantially similar (*see* Pl. Supp. App'x. Ex. C; Ex. F).

## B.    Agreement

The Agreement includes a release stating that:

> Lang and Mon Cheri . . . release and forever discharge Kaitz and Mirage and any of their heirs, subsidiaries and affiliated companies, successors, assigns, predecessors, parents, divisions, members, shareholders, officers, directors, employees, insurers, attorneys, agents and representatives from any and all claims, actions . . . arising out of . . . the [consolidated actions] . . . .

(A-II 277-78.)  Additionally, the parties attached an affidavit from Kaitz to the Agreement ("Kaitz Affidavit"), in which Kaitz stated that he was the "sole owner of Mirage" and that "[n]either Wen Wu nor any entities Mr. Wu owns or controls has any ownership interest in Mirage."  (A-II at 284-85.)

The Wu defendants contend that Mon Cheri's strategy with respect to the passing off claim—linking the Wu defendants to Mirage—is incompatible with the general release contained in the Agreement and statements in the Kaitz Affidavit.  They argue that the District Court erred in not ordering Mon Cheri to produce the document to them pre-trial.  Additionally, they argue that the District Court erred in denying their motion for a new trial after Mon Cheri linked them to Mirage, but concealed the general disclosure and the Kaitz Affidavit from the jury.

13

Despite their contentions, the existence of the Agreement was not hidden from the Wu defendants. Mon Cheri and Mirage reached a settlement in principal at a settlement conference with the court in November 2006, which the Wu defendants attended. The Wu defendants did not pursue any discovery related to the terms of the finalized agreement.[4] On July 3, 2007, nine months before the parties tried this case, Mon Cheri filed a Stipulation of Dismissal, indicating that it had settled with the Mirage defendants. (A-I at 807.) Again, the Wu defendants did not pursue the finalized agreement through discovery requests. The parties filed a Joint Pretrial Order on January 15, 2008, in which Mon Cheri disclosed that it intended to establish that the Wu defendants created the Mirage dress line. (A-I at 877-911.) The Wu defendants did not seek a copy of the Agreement at the final pre-trial conference, despite Mon Cheri's disclosure.

The first documented request from the Wu defendants for the Agreement was an email to Mon Cheri's counsel on the eve of trial. (A-III at 688-89.) Mon Cheri did not object, but informed the Wu defendants' counsel that the Agreement contained a confidentiality clause and that the Wu defendants would need to obtain consent from Kaitz or a court order directing Mon Cheri to produce it. Kaitz refused to consent.

---

[4] The Wu defendants contend that they requested the Agreement in their document request served on May 3, 2006. This document request predates the settlement by nearly six months. The Wu defendants contend that they made several requests in 2007, both in writing and orally, but they did not support this assertion with any documentation. The first documented request for the Agreement is in the form of an email sent from counsel for the Wu defendants to Mon Cheri's counsel on the eve of trial. (A-III at 688-89.)

14

The parties disagree over what transpired next. Mon Cheri contends that the Wu defendants did not pursue the issue any further until its motion for a new trial after Mon Cheri's closing argument. The Wu defendants assert that they raised this issue with the court in a pre-trial teleconference held on March 20, 2008. (A-II at 338-39.) There is no transcript from this conference. The Wu defendants assert that the District Court denied their request on the ground that liability could be apportioned through a reduction in damages. The Wu defendants assert that they registered an ongoing objection to this ruling because they felt that the Agreement could affect Mon Cheri's substantive case, not just damages. In the opinion denying the Wu defendants' motion for a new trial, the District Court referred to the March 20, 2008 conference, but did not mention or explain its pre-trial denial of their request. (A-I at 17-18.)

The Wu defendants did not pursue this issue again until the charging conference held on April 1, 2008. (Apr. 1, 2008 Tr. at 85-86.) At that time, the District Court ordered Mon Cheri to produce the Agreement the following day. On April 2, 2008, the District Court continued the charging conference; however, Mon Cheri did not produce the Agreement and the Wu defendants did not raise the issue. The District Court charged the jury on April 3, 2008, and the parties gave their closing arguments. Mon Cheri finally produced the Agreement on April 4, 2008, for *in camera* review. The District Court indicated that the Agreement and, in particular, the Kaitz Affidavit presented "a real problem." (Apr. 4, 2008 Tr. at 2-3.) The District Court ordered the parties to make

15

supplemental closing arguments to the jury to clarify which dresses were at issue for each claim. (*Id*. at 8.) Additionally, the District Court ordered Mon Cheri to produce the Agreement to the Wu defendants.

Upon reviewing the agreement, the Wu defendants argued that the general release applied to them thereby barring Mon Cheri's claims against them because testimony Mon Cheri solicited indicated that the Wu defendants were either an affiliate or an agent of Mirage, both of which were released under the Agreement. Secondly, the Wu defendants argued that the Kaitz Affidavit was contrary to the facts that Mon Cheri established at trial with respect to the relationship between Mirage and the Wu defendants. The Wu defendants requested a new trial in the event that the jury returned a verdict in Mon Cheri's favor. The District Court reserved judgment on that issue and permitted the parties to make their supplemental closing statements. (*Id*. at 16.)

The Wu defendants were not diligent in pursuing the Agreement and the evidence does not suggest that Mon Cheri intended to conceal it from the Wu defendants. Therefore, the case relied upon by the Wu defendants is distinguishable. In *Vernon Duane Daniel v. Penrod Drilling Co.*, 393 F. Supp. 1056 (E.D. La. 1975), the court granted a motion for a new trial because the plaintiff made a secret agreement with one of the defendants to drop its case against that defendant at the conclusion of the trial if that defendant refrained from attacking the plaintiff's case during trial and from informing the other defendants of the agreement. *Id*. at 1059-61. In this case, all parties were aware of

16

the Agreement and the Wu defendants had ample opportunity to obtain a copy of it in advance of trial. The District Court denied the Wu defendants' request to compel made during a teleconference held on March 20, 2008, noting that counsel delayed pursuit of this document until four days before trial. This ruling was reasonable in light of the parties' delay in pursuing discovery.

Second, it was clear from the Joint Pretrial Order that Mon Cheri intended to link the Mirage dress line to the Wu defendants; yet the Wu defendants did not object to those assertions in preparing the Order, and did not object at the final pretrial conference. Excerpts from the Order indicate that Mon Cheri intended to establish that:

> Defendants' breaches and infringements included the formation of a separate company, Mirage Collection, Inc., which was formed for the purpose of selling a line of dresses intentionally copied from Mon Cheri's flagship dress line, Montage.

*  *  *

> Defendant selected the name "Mirage" because the name sounded very much like "Montage," and they intended to and did in fact confuse the consuming public into thinking that the Mirage dresses were in fact Mon Cheri dresses.

(A-I at 880.)

Finally, the terms of the Agreement do not prohibit litigation of Mon Cheri's claims against the Wu defendants. "The general rule is that a release of one tortfeasor will not release others who may also be liable to plaintiff for his harm unless the release is so intended or the plaintiff receives as a result thereof either full satisfaction or

17

satisfaction intended as such." *Great Northern Ins. Co. v. Leontarakis*, 387 N.J. Super. 583, 594 (App. Div. 2006) (internal quotation marks omitted). There is no evidence that Mon Cheri or Kaitz intended to release the Wu defendants. To the contrary, the Kaitz Affidavit makes it clear that the Wu defendants did not own or control Mirage or receive any profits or income from Mirage. Mon Cheri and Kaitz likely included these statements to counter any defense of release by the Wu defendants. Further, Wu testified that he had no involvement with Mirage.

Mon Cheri pleaded theories of direct, contributory, and vicarious liability against the Wu defendants. The District Court charged the jury on these different theories of liability without objection from the Wu defendants. Finally, there is no support for any argument that the Agreement intended to cover Mon Cheri's breach claim against the Wu defendants, which arose out of an earlier contract exclusively between Mon Cheri and the Wu defendants.

## C. Jury Instructions

The Wu defendants contend that the jury instructions on the breach of contract, copyright infringement, and passing off claims unfairly tainted the deliberation process on the grounds that the instructions (1) failed to specify which claims pertained to which dresses, (2) permitted consideration of LaBelle and Mirage dresses, interchangeably, and (3) permitted consideration of the Mirage dresses, even though Wu was released by the Agreement. They contend that these erroneous instructions merit a new trial.

18

The Wu defendants failed to preserve this issue for appeal. They did not raise this issue at the charging conference and did not object during the jury charge. They first raised this issue in their post-trial motion. Under Rule 51 of the Federal Rules of Civil Procedure, a party must object or submit competing jury instructions to preserve that issue for appeal. *See* Fed. R. Civ. P. 51(d)(1) ("A party may assign as error: (A) an error in an instruction actually given, if that party properly objected; or (B) a failure to give an instruction, if that party properly requested it and—unless the court rejected the request in a definitive ruling on the record—also properly objected."). Otherwise, that party is not entitled to a new trial unless the instruction given was in plain error. *See* Fed. R. Civ. P. 51(d)(2) ("A court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights."). We see no such error here.

Moreover, the jury instructions do not suffer from the alleged infirmities. The jury instructions informed the jurors that Mon Cheri settled with Mirage. (Apr. 3, 2008 Tr. at 38.) Notably, the jury instruction on the passing off claim states: "Plaintiff's claims in connection with 'Passing Off' are limited to the Mirage dresses and do not include the sale of dresses under the Labelle Fashion label." (A-I at 863.) Further, the District Court directed the parties to make supplemental closing arguments on this precise issue to provide additional clarity for the jury.

19

**D.     Challenge to Admission of Hearsay Evidence**

At trial, Beverly Martin, a wedding dress retailer, testified about an incident in which an individual named "Dominic" entered her store and encouraged her to pass off Mirage dresses as Montage dresses. Mon Cheri sought to introduce her testimony on Dominic's out of court statements as the admissions of a party opponent under Rule 801(d)(2)(D) of the Federal Rules of Evidence, contending that Dominic was the Wu defendants' agent. The District Court permitted Martin to testify and informed the jury that they should only consider her testimony if they first determined that Dominic was an agent. The Wu defendants assert that the District Court erred in sending the agency finding to the jury, that there was insufficient evidence to establish agency, and that the jury's consideration of the hearsay statements was highly prejudicial.

It is unnecessary to determine whether it was improper to send the agency issue to the jury as the evidence overwhelmingly supported a finding that Dominic was an agent for the Wu defendants. Martin testified that Dominic identified himself as a sales representative of various dress lines sold by the Wu defendants. (Pl. Supp. App'x. Ex. V at 48.) Martin purchased approximately twenty dresses from Dominic. Dominic filled out the purchase order, which was a form for dresses to be ordered from "Jacqueline Bridals, Mirage, Tiffany, The Private Collection, Christina Wu and La Belle." (*Id*. at 56-57.) There is no dispute that the non-Mirage brands mentioned are brands created by and sold exclusively by the Wu defendants. All of the dresses ordered (including the Mirage

20

dresses), were shipped from the Wu defendants' warehouse in Fort Myers, Florida. (*Id.* at 60.) Other sales representatives identified Dominic as a sales agent for Wu. (Pl. Supp. App'x. Ex. X at 27-28.) Indeed, several of the Wu defendants' witnesses, including Wu himself, admitted that Dominic worked as a sales representative for the Wu defendants for several years and that his sales territory covered Martin's store. (Pl. Supp. App'x. Ex. W at 22-24; Ex. Y at 135.) Sending this evidentiary issue to the jury was a harmless error at most as Martin's testimony regarding her conversation with Dominic was admissible as a party-admission under Rule 801(d)(2)(D).

## E.     Damages

The Wu defendants contend that there is insufficient evidence to support the jury's award of compensatory damages. Mon Cheri cross-appeals the District Court's grant of the Wu defendants' motion to vacate the jury's award of punitive damages, as well as the denial of Mon Cheri's motion for augmented damages under the Lanham Act.

### 1.     Damages for Breach of Contract

The jury awarded Mon Cheri $107,000 for its breach of contract claim. The Wu defendants contend that Mon Cheri failed to establish actual damages and therefore, is only entitled to an award of nominal damages. We disagree. Generally, "a breach of contract without pecuniary harm entitles the non-breaching party to no more than nominal damages." *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 988 F.2d 386, 409 (3d Cir. 1993). However, when the defendant's profits better define the harm suffered, it is appropriate to

21

use a defendant's profits as the measure of damages. *See U.S. Naval Inst. v. Charter Comms., Inc.*, 936 F.2d 692, 696 (2d Cir. 1991) (explaining that a defendant's profits will support a damages award "when those profits tend to define the plaintiff's loss"). Wu testified as to the dresses that he sold and the profits that he accumulated, which supported the jury's award under this alternative theory of damages.

## 2. Damages for Copyright Infringement

An infringer of a copyright is liable either for the copyright holder's actual damages or for statutory damages. *See* 17 U.S.C. § 504(a). Mon Cheri elected the former. "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). "Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985). Further, "[i]f the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profits. " *Id*.

In the instant action, the jury awarded Mon Cheri $107,000 on Mon Cheri's copyright infringement claim. Mon Cheri established the number of dresses sold and the price, thereby meeting its *prima facie* burden. Wu testified regarding the net profits and costs associated with these sales. The Wu defendants did not present any additional

22

evidence on costs, such as purchase orders or bills. The jury instructions properly informed the jurors of the burdens of proof for both sides. (A-I at 862-63.) The jury considered the evidence presented and likely discredited Wu's testimony on costs in reaching its award, which is permitted under the Copyright Act.

### 3. Damages for Passing Off

The jury awarded Mon Cheri $110,000 in damages on its passing off claim. The Wu defendants attack this award on the grounds that (1) the jury improperly based its award on the Mirage dresses, and all liability stemming from those dresses was released in the Agreement, and (2) Mon Cheri cannot base its award for both its copyright infringement and passing off claims on the same profits. Both contentions lack merit. [5] First, as discussed above, the Agreement does not release the Wu defendants. Second, Mon Cheri did not receive a double recovery. The jury awarded $107,000 on the copyright infringement claim for infringement related to the LaBelle dresses. The jury awarded $110,000 on the passing off claim related to the Mirage dresses. These awards reflect harm suffered under separate statutory schemes for separate facts and the jury instructions specified which dresses applied to which claims.

Mon Cheri cross-appealed the District Court's denial of its request for treble

---

[5] Judge Ditter while agreeing with the rest of the opinion believes that the passing off claim did not have sufficient evidence to prove the claim which justified sending the issue to the jury. Because he believes the issue should never have been presented to the jury, he would limit the plaintiff's recovery to the balance of the damages.

damages on this claim under the Lanham Act and New Jersey law on unfair competition. The Wu defendants failed to respond to this issue in their reply brief. As an appellate court, we review a district court's decision with respect to treble damages for abuse of discretion. *See Burger King Corp. v. Mason*, 855 F.2d 779, 782-83 (11th Cir. 1979). Both the Lanham Act and New Jersey unfair competition law give courts the power to treble damages. *See* 15 U.S.C. § 1117(a); N.J. Stat. Ann. § 56:4-2. However, if the court finds an intentional or willful violation of the Lanham Act, "the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages . . . ." 15 U.S.C. § 1117(b). As one circuit has explained:

> The interplay of these provisions demonstrates that a showing of intent or bad faith is unnecessary to establish a violation of [the Lanham Act], or to seek remedies pursuant to § 1117(a). But where, as here, a registrant seeks the mandatory treble damages and attorneys' fees provided for in § 1117(b), the plaintiff must prove the defendants' intent to infringe.

*Chanel, Inc. v. Italian Activewear of Fl., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991).

In the instant action, it is unclear whether Mon Cheri sought trebling under discretionary § 1117(a) or mandatory § 1117(b). The District Court denied Mon Cheri's request for trebled damages explaining that "[t]he circumstances of this case, the claims involved, and the verdict returned by the jury awarding damages, do not warrant augmented damages." (A 13.) Mon Cheri has not persuaded us to disturb this ruling whether it was made under either provision.

### 4. Punitive Damages

The jury awarded Mon Cheri $375,000 in punitive damages, in addition to a total award of $324,000 in compensatory damages. The District Court vacated the jury's award of punitive damages, which Mon Cheri now appeals. This circuit reviews de novo the constitutionality of an award of punitive damages; however, the court must accept findings of fact by the district court, unless those findings are clearly erroneous. *See Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 440 n.14 (2001).

"The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). To determine whether an award of punitive damages comports with due process, courts must "consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id*. (citing *BMW of N. Am. Inc. v. Gore*, 517 U.S. 559, 575 (1996)). "The Supreme Court has recognized that the degree of reprehensibility of the defendant's conduct is 'the most important indicium of the reasonableness of a punitive damages award.'" *CGB Occ. Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 190 (3d Cir. 2007) (quoting *Campbell*, 538 U.S. at 419). To evaluate the degree of reprehensibility, courts consider whether: "(1) the harm caused

25

was physical as opposed to economic, (2) the tortious conduct evinced an indifference to or reckless disregard of the health or safety of others, (3) the target of the conduct had financial vulnerability, (4) the conduct involved repeated actions or was an isolated incident, and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Id*. (citing *Campbell*, 538 U.S. at 419).

Mon Cheri challenges the District Court's finding with respect to the fourth and fifth reprehensibility factors.[6] The District Court found the fourth factor in the Wu defendants' favor explaining that in this circuit, "the 'repeated conduct' factor will necessarily have 'less force' where the defendant's misconduct did not extend beyond his dealings with the plaintiff." (A-I at 9 (quoting *CGB Occ.*, 499 F.3d at 191).) The District Court recognized that there were numerous dresses involved and repetitive conduct, but gave this factor less weight because the Wu defendants' reprehensible conduct was limited to their dealings with Mon Cheri. (A-I at 10.) The District Court's adherence to this Court's precedent was not improper.

With respect to the fifth factor—intent—the District Court concluded that "based on the nature of [Mon Cheri's] passing off claims . . . [whether] . . . the harm was the result of intentional malice, [or] trickery, is unclear and uncertain." (A-I at 10.) The District Court indicated that the only claim for which punitive damages was available was

---

[6] The District Court found the first three factors in favor of the Wu defendants, which is supported by the record and not challenged on appeal. Accordingly, we will not address the District Court's analysis with respect to these factors.

the passing off claim. The District Court noted that the evidence of the Wu defendants' involvement consisted of their agent Dominic's attempt to pass off Mirage dresses, which was too attenuated to support punitive damages. Mon Cheri has not persuaded us to disturb this finding, which is dispositive on the issue of punitive damages.

## F. Attorneys' Fees

The District Court denied Mon Cheri's motion for attorneys' fees, which Mon Cheri appeals, contending that it is entitled to fees under both the Lanham and Copyright Acts. Courts have the power to award attorneys' fees under both the Lanham and Copyright Acts. *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."); *see also* 17 U.S.C. § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of full costs . . . [and] . . . the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."). This circuit reviews such decisions for abuse of discretion. *See Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009); *see also Securacomm Consulting, Inc. v. Securacomm Inc.*, 224 F.3d 273, 279 (3d Cir. 2000).

In the instant action, the District Court denied Mon Cheri's request for attorneys' fees under the Lanham Act. Under the totality of the circumstances of this case, we do not find the District Court's denial an abuse of discretion. Moreover, because the standards for awarding fees under both acts are substantially similar, we decline to remand the issue of whether to award fees under the Copyright Act as a denial under this

27

Act would be appropriate as well.

## CONCLUSION

For the reasons set forth above, we will affirm the judgment of the District Court in all respects.